

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*/s/ Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed April 30, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 12-32510-BJH-11** |
| **SUNG MO KIM and YOUNG OK KIM,** | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |

**INTERIM ORDER AUTHORIZING**
**USE OF CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION**

On April 27, 2012, the Court considered the *Debtors' Emergency Motion for Use of Cash Collateral* [Docket No. 6] (the "Motion") filed by Sung Mo Kim and Young Ok Kim (collectively, the "Debtors"). Based upon the record herein, due deliberation thereon, good and sufficient cause existing, the Court hereby finds and concludes as follows:[1]

**SUBSEQUENT HEARING**

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

A subsequent hearing on the Motion shall be held on May 16, 2012, at 9:00 a.m., prevailing Central time, before the Honorable Barbara J. Houser, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court, 1100 Commerce Street, 14th Floor, Dallas, Texas, 75242.  Any party that has an objection to the Debtors' use of cash collateral shall file an objection on or before May 14, 2012.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### The Commencement of the Case

A. The Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 21, 2012 (the "Petition Date"). Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

B. The filing of the Debtors' voluntary petition commenced the bankruptcy case styled *In re Sung Mo Kim and Young Ok Kim*; Case No. 12-32510-BJH-11 (the "Bankruptcy Case") which is pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").

### Cash Collateral

C. As used herein, "Cash Collateral" shall mean all cash, cash equivalents, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest, including the Lender's collateral as provided in Bankruptcy Code § 552(B), whether existing before or after the commencement of the Bankruptcy Case.[2]

---

[2] "Lender" shall mean U.S. Bank National Association, Successor in Interest to Bank of America, National
(continued...)

**INTERIM ORDER AUTHORIZING USE OF
CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION**  Page 2 of 13
38935-0367/LEGAL23467601.2

D.   The Lender does not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Interim Order. The Debtors have requested that they be entitled to use Cash Collateral for the purposes set forth in the budget attached hereto as **Exhibit 1** (the "Budget") and such other purposes as required by this Interim Order.

E.   Without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets and pay operating expenses, overhead, costs to administer the Debtors' estate, and other expenses necessary to maximize the value of the Debtors' assets. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtors and the bankruptcy estate. The ability of the Debtors to maximize the value of their assets depends upon the Debtors' ability to use Cash Collateral. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving the bankruptcy estate.

F.   The Debtors have requested that the Lender permit the use of Cash Collateral to be used solely for such purposes set forth in the Budget.

G.   Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.

H.   Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Motion is hereby **APPROVED AND GRANTED** as described herein.

## ORDER

### Authorization for Use of Cash Collateral

---

(...continued)
Association, as Successor by Merger to LaSalle Bank National Association, as Trustee for the Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-TOP21.

1. The Debtors shall segregate and account to the Lender for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with the Debtors, or that the Debtors might hereafter obtain or have any interest in. The Debtors shall account to the Lender for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Interim Order. Absent a further Order of this Court or the consent of the Lender, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for herein.

2. The Debtors are hereby authorized to use Cash Collateral only in strict accordance with the terms and conditions provided in this Interim Order (including the Budget). Furthermore, the Debtors are authorized and hereby agree to perform any and all acts reasonably required by the Lender to comply with the terms and conditions of this Interim Order.

## Cash Collateral Accounts

3. The bank accounts of the Debtors (collectively, the "Cash Collateral Accounts") shall be in the name of the Debtors, but by virtue of this Order, the Lender shall have valid and perfected liens against the Cash Collateral Accounts to secure its interest in the Cash Collateral and no further actions are required by the Lender to perfect such liens. The Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts, except in strict compliance with the terms of this Interim Order and the Budget.

## Adequate Protection of the Lender's Interests

4. As adequate protection of the Lender's liens on and security interests in its collateral (the "Collateral") and for the Debtors' use of Cash Collateral and only so long as an Event of Default (as defined in paragraph 18 below) shall not have occurred, the Debtors are authorized to and shall use the Cash Collateral strictly in accordance with the Budget.

5. The Lender consents to the use of Cash Collateral only for amounts actually incurred in accordance with the Budget. Upon the occurrence of an Event of Default, the Lender's consent to the use of Cash Collateral shall automatically and immediately terminate and any consent to use of Cash Collateral to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn. In no event will expenses or Budget amounts be considered incurred until the week such expense or budgeted amount is listed in the Budget.

6. The Debtors and the Lender may modify or extend the Budget, without further notice to creditors or Order of this Court, provided that a stipulation signed by counsel to the Debtors and the Lender is filed together with a copy of a Budget. The stipulation shall become effective three business days after notice of the stipulation has been served on all parties on the Debtors' service list.

7. On or before May 15, 2012 (and if this Interim Order is extended as provided in paragraph 6, on or before the 15th day of each subsequent month), the Debtors shall pay to the Lender by wire transfer or corporate check of immediately available funds (a) $984 (or such other amount reflected in the Budget) as adequate protection of the Lender's interest in the Collateral; (b) $3,164 (or such other amount reflected in the Budget) to fund a reserve for ad valorem taxes; and (c) $295 (or such other amount reflected in the Budget) to fund a reserve for property insurance.

8. As further adequate protection, Sung & Young Kim Corporation shall not make any payments to any person, including the Debtors, except as are necessary to satisfy its operating expenses; provided that Sung & Young Kim Corporation shall be authorized to make the regularly scheduled monthly payment to United Central Bank for the month of May and

make wage payments to the Debtors, which funds shall be used in accordance with this Interim Order.

### Replacement Liens

9. As adequate protection of the Lender's interest in the Collateral and for the Debtors' use of Cash Collateral, the Lender is hereby granted, effective as of the Petition Date, valid and automatically perfected replacement liens and security interests in and upon (a) the Collateral to the extent of any diminution in the value of the Lender's interest in such Collateral; (b) all property acquired by the Debtors after the Petition Date that is of the exact nature, kind or character of the Collateral; and (c) all cash and receivables that are proceeds, products, offspring, or profits of such Collateral. The liens granted in this Interim Order shall not extend to chapter 5 causes of action.

### Automatic Perfection

10. This Interim Order shall be sufficient and conclusive evidence of the perfection, attachment, and validity of all of the Lender's security interests in and liens on the Collateral and the liens and security interests granted and created by this Interim Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to the Lender by this Interim Order; or (b) the adequate protection and replacement liens and security interests granted herein to the Lender.

11. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Lender's liens and security

interests authorized, ratified, or created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the Court.

### Automatic Stay

12.     The automatic stay is hereby vacated and modified to the extent necessary to permit the Debtors and the Lender to (a) commit all acts, actions, and transfers necessary to implement this Interim Order; (b) commit all acts and actions contemplated herein; and (c) pursue the Lender's rights and remedies as to the Collateral in accordance with this Interim Order.

### Collateral Insurance, Maintenance, Taxes, and Deposits

13.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral, and in accordance with the Lender's loan documents (covering such risks in amounts as shall be satisfactory to the Lender and shall name the Lender as loss payee thereunder), including, without limitation, insurance covering the Collateral and such other collateral of the Lender, if any, as the Lender may from time to time reasonably request; and, at the Lender's request, the Debtors shall deliver to the Lender evidence of the maintenance of such insurance.

14.     Upon receipt of notification (written or oral) that an insurance policy issued prior to the Petition Date covering any Collateral will not be renewed by the respective carrier, the Debtors will immediately notify the Lender in writing of such occurrence and thereafter provide the Lender with the status of all negotiations, if any, regarding such policy on a weekly basis.

15.     To the extent permitted by the Budget, the Debtors shall make any and all payments necessary to keep the Collateral and its other property in good repair and condition and not permit or commit any waste thereof.  The Debtors shall exercise their business judgment and, in so doing shall preserve, maintain, and continue all material patents, licenses, privileges, franchises, certificates and the like necessary for the operation of its business.

### Reporting Requirements

16.     The Debtors are directed to provide to the Lender (a) financial or other information concerning the Debtors' acts, conduct, property, assets, liabilities, operations, financial condition, and transactions, or concerning any matter that may affect the administration of the bankruptcy estate, as the Lender may from time to time reasonably request; (b) on or before the tenth day of each month, reports of receipts and cash usage for the prior month in a form agreeable to the Lender in its sole and absolute discretion; (c) copies of all reports provided to the Office of the United States Trustee within two days after such reports are provided; (d) on or before the fifth day of each month, rent rolls for the prior month; (e) within two business days after entry of this Interim Order, a copy of all existing leases and other agreements with tenants (specifically including any documents relating to the lease with Sung & Young Kim Corp.), and thereafter, a copy of any new lease or other agreement with tenant within two business days after execution; and (f) within two business days after entry of this Interim Order, a report of all rents received by the Debtors between April 21, 2011 and the Petition Date.

17.     Subject to all applicable privileges and reasonable notice, the Lender and its agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable the Lender or its agents and advisors to (a) review, appraise, and evaluate the physical condition of the

Collateral; (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses; and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the Lender regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to the Lender and its professionals and consultants to conduct such reviews, evaluations, and inspections.

## Events of Default

18. The occurrence of any of the following shall constitute an Event of Default under this Interim Order: (a) the occurrence of the Expiration Date (as defined in paragraph 28 below), termination, expiration, or non-renewal of this Interim Order; (b) any default, violation, or breach of any of the terms of the Interim Order or the final Order by the Debtor; (c) conversion of the Bankruptcy Case to a bankruptcy case under chapter 7 or the dismissal of the Bankruptcy Case; (d) the appointment of a trustee, a responsible person, or an examiner with expanded powers relating to the operation of the business of the Debtors without the consent of the Lender; (e) the entry of an Order terminating the Debtors' use of Cash Collateral; and (f) any other security interest, lien, claim, or encumbrance shall be granted in any of the Collateral which is *pari passu* with or senior to the claims of the Lender. Any of the foregoing events of shall be referred to individually as an "Event of Default" or collectively as "Events of Default".

## Remedies

19. Upon the occurrence and continuation of any Event of Default, the Lender may terminate the Debtors' authority to use Cash Collateral (if it has not automatically terminated pursuant to this Interim Order) or take any and all actions and exercise any other right or remedy permitted under this Interim Order or applicable law, all without further application or Order of

the Court, provided that (a) the Lender shall not be obligated to take title to any of the Collateral in the pursuit of the Lender' rights and remedies; and (b) the Lender shall file a written notice with the Court and provide the Debtors and the United States Trustee with three business days' written notice before taking such action.

### Other Terms

20. The terms and provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any Order that may be entered converting to chapter 7 or dismissing the Bankruptcy Case, except for the Debtors' authority to use Cash Collateral (which shall immediately terminate upon entry of such an Order).

21. The provisions of this Interim Order shall inure to the benefit of the Debtors and the Lender, and it shall be binding upon (a) the Debtors and their successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtors or with respect to property of the estate of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case; and (b) all creditors of the Debtors and other parties in interest.

22. If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed without the prior, written consent of the Lender, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the Lender before the effective date of such modification, vacation, or stay; or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, created, or confirmed hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original

provisions of this Interim Order, and the Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

23. No approval, agreement, or consent requested of the Lender by the Debtors pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Lender other than a writing acceptable to the Lender that is signed by the Lender and expressly shows such approval, agreement or consent, without limitation.

24. Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Lender to obtain further adequate protection and other statutory protections for the use of the Collateral and Cash Collateral, or to seek other relief in the Bankruptcy Case in accordance with any provision of the Bankruptcy Code or applicable law, and all of the Debtors' rights to contest any such requests are preserved.

25. This Court hereby expressly retains jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection therewith.

26. All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## Notice

27. The Debtor' proposed counsel shall serve this Interim Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for the Lender; (c) all creditors known to Debtors who have or may assert liens against any Debtors' assets; (d) the United States Internal Revenue Service; (e) the twenty largest unsecured creditors of the Debtor; and (f) all parties in interest who have filed a notice of appearance or upon whom service

must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Northern District of Texas.

### Expiration Date

28.    The Lender's consent, and Debtors' authority, to use Cash Collateral subject to the funding and Budget limitations above, shall be effective upon entry of this Interim Order to and including the earlier of: (a) notice of the occurrence of an Event of Default; or (b) **May 16, 2012**, at 5:00 p.m., prevailing Central time, at which time all of the Debtor' authority to use Cash Collateral shall terminate, unless extended by written agreement of the parties hereto, a copy of which shall be promptly filed with this Court by the Debtors (the "Expiration Date").

### # # # END OF ORDER # # #

**Agreed to and Accepted by:**

/s/ Patrick Wright
Patrick Wright, Texas Bar No. 22045800
10888 Shady Tr
Dallas, TX 75220
Phone: 214.745.1080
Fax: 214.745.1140
Email: patrick@wrightfirm.com

**PROPOSED COUNSEL FOR THE DEBTORS**

**-AND-**

/s/ Richard H. London
Richard H. London, Texas Bar No. 24032678
**PERKINS COIE LLP**
2001 Ross Avenue, Suite 4225
Dallas, TX 75201
Telephone: 214.965.7702
Facsimile: 214.965.7752
RLondon@perkinscoie.com

**COUNSEL FOR THE LENDER**

**EXHIBIT 1**

Case No. 12-32510-11.  Sung Mo Kim and Young Ok Kim

30 Days Cash Collateral Budget

**Revenues for April 21 to May 21, 2012:**

Sung Mo Kim        dba Virginia Plaza Revenues:

| Tenant | Rental Income | Property Taxes | CAM charge | Insurance |
|---|---|---|---|---|
| Sung & Young Kim Corp. | (None due until 12-1-12) | 404 | 176 | 28 |
| Star Papa, LP dba Papa Johns. Ste 130. | 1934 | 399 | 213 | 35 |
| The Red Dog Paw Spa, LLC (Carolyn Ward). Ste 170. | 1215 | 263 | 140 | 23 |
| Payless Cleaners (Polani). Ste 150. | 1900 | | | |
| Tony Italian Beef (Holmes). Ste 140 | 620(reduced for month of May) | | | |
| McKinney's Florist (Wilson). Ste 180. | 1700 | | | |
| Total | 7369 | 1066 | 529 | 86 |

Total Revenue for May, 2012:     9050

**Sung Mo Kim Expenses for 4-21-12 to 5-21-12:**

**1.     Virginia Plaza Expenses:**

| | |
|---|---|
| building water | 282 |
| repairs | 100 |
| electric | 120 |
| building insurance | 295 |
| management fees | 400 |
| accountant | 200 |
| real property tax | 3164 |
| landscaping | 250 |
| waste management | 302 |
| telephone | 120 |
| security | 40 |

Subtotal Expenses:         5273

## 2. Personal Expenses

| | |
|---|---|
| rent | 1290 |
| electric | 240 |
| water | 75 |
| telephone | 95 |
| food | 350 |
| clothing | 45 |
| medical | 100 |
| transportation | 300 |
| auto insurance | 110 |
| auto installment payment | 188 |

Subtotal Expenses: 2793

Total Expenses: 8066

Net Income: 984

Total Amount to be paid to Secured Lender on May 15, 2012:

| | |
|---|---|
| Net Income: | 984 |
| Real Property tax: | 3164 |
| Building insurance | 295 |
| Total: | 4443 |